**UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| B.O.,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE CITY OF NEW YORK; THE NEW YORK CITY POLICE DEPARTMENT; and POLICE OFFICER JOHN DOE 1, and  POLICE OFFICER JOHN DOE 2, in their individual and official capacities,<br><br>                    Defendants. | **COMPLAINT**<br><br>Index No.:<br><br>**JURY TRIAL DEMANDED** |

Plaintiff B.O., by and through her undersigned attorneys, as and for her Complaint, alleges as follows:

## PRELIMINARY STATEMENT

1.      This action alleges that in 2004, when she was only 15 year old, the Plaintiff was sexually assaulted and molested by a uniformed police acting under color of State law.

2.      Plaintiff "B.O." (hereinafter "Plaintiff") is identified pseudonymously in this action to protect her identity, given the highly sensitive and personal subject matter alleged in this case. Immediately upon the appearance of counsel on behalf of Defendants, Plaintiff proposes to disclose the name of the Plaintiff to Defendants' counsel subject to a proposed confidentiality order to maintain the confidentiality of the Plaintiff's identity throughout this litigation. Such consent has routinely been received and such orders have been granted in numerous New York State Supreme Court actions filed since the New York's amended statute of limitations for sexual abuse actions, N.Y. Civil Practice Law and Rules §214-g, went into effect.

{00048893}                                    3

## JURISDICTION

3.      Subject matter jurisdiction exists in this case pursuant to 42 U.S.C. §1983 and 28 U.S.C. §1331, in that the Defendants in this action deprived Plaintiff of her constitutional rights while acting under color of state law.

4.      Jurisdiction also exists pursuant to 28 U.S.C. §1332(a), based upon complete diversity of citizenship of the parties and the amount in controversy, in that Plaintiff is a citizen of the State of Florida and Defendants are all citizens of the State of New York. The Plaintiff claims damages in this action in excess of $75,000.

5.      In addition, this Court has the authority to assert supplemental jurisdiction over the New York State based causes of action alleged in this Complaint pursuant to 28 U.S.C. §1367.

6.      Plaintiff respectfully requests that this Court assume supplemental jurisdiction over the New York State causes of action alleged in this Complaint.

## VENUE

7.      Venue is proper pursuant to 28 U.S.C. §1402(b) in that all, or a substantial part of the acts and omissions forming the basis of these claims occurred in the County of Queens, city and State of New York, which is within the jurisdiction of this Court.

## THE PARTIES

8.      At all times relevant times hereinafter mentioned, Plaintiff was a fifteen year old girl residing in Rockland County, State of New York.

9.     At all relevant times hereinafter mentioned, Defendant CITY OF NEW YORK was and is a municipal corporation duly organized and existing by virtue of the laws of the State of New York.

10.     At all relevant times hereinafter mentioned, Defendant New York City Police Department (hereinafter "NYPD") is an entity duly organized and existing by virtue of the laws of the State of New York.

11.     At all relevant times, Defendant CITY OF NEW YORK and NYPD had the legal obligation and duty to create and implement policies, procedures, regulations and protocols to protect citizens and the general public from foreseeable risk of harm.

12.     At all relevant times hereinafter mentioned, Defendant POLICE OFFICER JOHN DOE 1 (hereinafter "ABUSER") was a police officer acting in his official law enforcement capacity and was an agent, servant, and employee for Defendants NYPD and THE CITY OF NEW YORK.

13.     Upon information and belief, ABUSER, at all relevant times was, and currently is, a citizen of the State of New York.

14.     At all relevant times hereinafter mentioned, Defendants THE CITY OF NEW YORK and NYPD, stood in such a relationship with ABUSER, such that the actions of ABUSER would render Defendants THE CITY OF NEW YORK and NYPD vicariously liable on the basis of *respondeat superior*.

15.     At all relevant times hereinafter mentioned, Defendant POLICE OFFICER JOHN DOE 2 (hereinafter "PARTNER") was a police officer, and partner of ABUSER on the night of the incident in question, acting in his official law enforcement capacity, and acting as an agent, servant, and employee for Defendants NYPD and THE CITY OF NEW YORK.

16.     Upon information and belief, PARTNER, at all relevant times was, and currently is, a citizen of the State of New York.

17.     At all relevant times hereinafter mentioned, Defendants THE CITY OF NEW YORK and NYPD, stood in such a relationship with PARTNER, such that the actions of PARTNER would render Defendants THE CITY OF NEW YORK and NYPD vicariously liable on the basis of *respondeat superior*.

## THE FACTS

18.     On a Friday in approximately late October or November, 2004, in the very early morning hours, estimated at approximately 3 a.m., Plaintiff and a female friend (referred herein anonymously to protect her identity as "FRIEND") left a nightclub named the "Avalon", since shuttered, which upon information and belief was then located at 47 W 20th Street, New York, NY 10011.

19.     The girls entered an underground subway in lower Manhattan with the intention of returning, by train, to FRIEND's family's home in Queens, New York.

20.     The girls' intention was to take the A Line train to the last stop on the line, Mott Avenue, in Queens, New York, which is within walking distance from FRIEND's home, where they intended to spend the rest of the night.

21.     Both the Plaintiff and FRIEND, 15 and 16 year old girls, respectively, were intoxicated on that night.

22.     Upon information and belief, shortly after entering the subway station in lower Manhattan, Plaintiff and B.O. embarked on the A Line Train heading toward Queens, N.Y.

23.    Upon information and belief, either because of the time of night or the particular train they took, the A Train, which had at least two alternative routes in 2004, did not take the girls to Mott Avenue.

24.    Instead, Plaintiff and FRIEND found themselves in an unfamiliar area of Queens.

25.    Upon information and belief, the girls disembarked the train at Beach 116th Street, which was the last stop on the alternative route of the A Line in 2004.

26.    Unsure of what to do, where they were, or how to get home, Plaintiff and B.O. approached two fully uniformed police officers, whose names are unknown and referenced herein as ABUSER and PARTNER, who were on or near the train platform at the time.

27.    The girls requested their aid and assistance as officers of the peace to figure out how to get home.

28.    To the best of the Plaintiff's recollection, ABUSER appeared to be a male, then in his late 20s to early 30s, without facial hair, with brown hair and of average height.

29.    Plaintiff further recalls the officers wearing blue NYPD issued uniform shirts and pants, as well as the full standard issue equipment (gun, badge, etc.) on the officers' persons.

30.    Upon information and belief, ABUSER and PARTNER were stationed together on the A Line subway platform at the time they first encountered the Plaintiff and FRIEND.

31.    ABUSER began to flirt with the girls, who were both minors at that time.

32.    The officers were affirmatively told by the Plaintiff that she was 15 years old and that FRIEND was 16 years old.

33.    ABUSER proposed taking the girls to his apartment nearby in Queens, allegedly to help them figure out where they needed to go with the use of a website called "MapQuest".

34.     PARTNER, notwithstanding this proposed appalling breach of protocol by his partner, failed to intervene, dissuade his partner, call for assistance for the girls, or even accompany his partner to ensure the safety of the Plaintiff or FRIEND.

35.     Plaintiff and FRIEND agreed and exited the train station with ABUSER. Upon information and belief, they were escorted by ABUSER into what may have been the officer's patrol car.

36.     After a short commute from the train station, the girls and ABUSER arrived at a two story residential building that was typical in its appearance.

37.     The girls entered ABUSER's apartment and sat down on the couch.

38.     ABUSER then removed his NYPD issued handcuffs and proceeded to cuff the hands of both minor girls together on the couch in his living room. He then proceeded to attempt to engage in sexual relations with the girls.

39.     After being rebuffed by FRIEND, ABUSER removed the handcuffs from FRIEND.

40.     He then proceeded to perform sexual acts on the Plaintiff in violation of the New York State Penal Code, in that ABUSER did commit or perform:

    a.  Sexual offenses upon the Plaintiff without her consent, in violation of New York State Penal Law §130.05, in that the Plaintiff was subjected to:

        i.  Forcible compulsion of sexual acts (Penal Law §130.05(2)(a));

        ii.  And had an incapacity to consent to sexual acts (Penal Law §130.05(2)(b)), in that she:

            1.  Was less than seventeen years old pursuant to Penal Law §130.05(3)(a);

2. Was mentally incapacitated in connection with her inebriated state pursuant to Penal Law §130.05(3)(a);

3. Was physically helpless, pursuant Penal Law §130.05(3)(d); and

4. Was "detained or otherwise in the custody of a police officer, peace officer, or law enforcement officer" pursuant to Penal Law §130.05(3)(j).

b.  "Oral sexual conduct" with the Plaintiff in violation of Penal Law §130.20;

c.  "Criminal sexual acts in the third degree" in violation of Penal Law §130.40(1)(lack of consent other than being less than seventeen years old) and Penal Law §130.40(2)(sexual act with a minor perpetrated by an individual over the age of twenty-one years old), as defined by Penal Law §130.00(3) (sexual contact defined);

d.  "Criminal sexual act in the second degree" in violation of Penal Law §130.45(2) (sexual conduct with another person who is incapable of consent "by reason of being . . . mentally incapacitated");

e.  "Criminal sexual act in the first degree" in violation of Penal Law §130.50(1) and (2) (forcible compulsion and incapacity to consent by reason of being physically helpless);

f.  "Forcible touching" in violation of Penal Law §130.52(1)(forcible touching);

g.  "Sexual abuse in the third degree" in violation of Penal Law §130.55 (sexual contact without the victim's consent);

h.   "Sexual abuse in the second degree" in violation of Penal Law §130.60(1) (sexual contact without consent other than minor status);

i.   "Sexual abuse in the first degree" in violation of Penal Law §130.65(1)-(2) (sexual contact by forcible compulsion or without consent by reason of being physically helpless);

j.   "Aggravated sexual abuse in the fourth degree" in violation of Penal Law §130.65-a(1)(b)(insertion of finger into genitals of victim without consent other than due to her age);

k.   "Aggravated sexual abuse in the second degree" in violation of Penal Law §130.67(1)(a)-(b)(insertion of finger into genitals of victim without consent due to forcible compulsion or by reason of being physically helpless); and

l.   "Predatory sexual assault against a child" in violation of Penal Law §130.96.

41.   All of the foregoing conduct was performed on the Plaintiff without her consent, which could not have given in light of her minor age, her inebriated state, and her status of being helpless due to her being within the express and implied custody, control, and power of an officer of the peace, and the implied and express threat of force placed upon the Plaintiff by ABUSER.

42.   At the conclusion of the foregoing assault, the girls accessed and learned how to get home through a search on MapQuest. It is not recalled how the girls ultimately returned to FRIEND's home that night, but it is recalled that ABUSER took them via car somewhere.

43.   ABUSER threatened Plaintiff that he would hurt her if she told anyone about what happened.

44.     Once they had returned to FRIEND's home, a call was made to the local police department, which resulted in several uniformed officers coming to the home of FRIEND to interview her and the Plaintiff.

45.     Ultimately, the Plaintiff was taken to a local police precinct, which contacted the Plaintiff's mother. Plaintiff's mother picked her up and returned to the Plaintiff to her home in Rockland County.

46.     The following day, a Saturday, detectives arrived at the home of the Plaintiff in Rockland County for purposes of taking a statement in connection with the events of the prior day.

47.     As Sabbath observers, the Plaintiff's father requested that the detectives return on a different day to discuss these sensitive matters.

48.     The detectives never returned, and the Plaintiff and her parents, now fearful of the consequences, chose not to further pursue the matter with the police.

49.     In December, 2004, the Plaintiff was referred to a psychiatrist. The psychiatrist's note for his initial visit with the Plaintiff, on December 28, 2004, corroborates the Plaintiff's history of a "recent rape."

## COUNT I
## VIOLATION OF CIVIL RIGHTS ACT, 42 U.S.C. § 1983

50.     Plaintiff repeats and re-alleges every allegation in this Complaint as if fully set forth herein.

51.     At all relevant times Defendants acted and/or refrained from acting under color of statutes, ordinances, regulations, custom or usages of the State of New York.

52.     Plaintiff is a citizen of the United States and person within the jurisdiction of the United States.

53.     The conduct of Defendants has proximately caused the deprivation of rights, privileges or immunities possessed by Plaintiff which are secured by the Constitution and laws of the United States, and Plaintiff therefore brings this action pursuant to 42 U.S.C. §1983.

54.     Among these rights are Plaintiff's substantive due process rights, secured by the Fifth and Fourteenth Amendments, to be protected from bodily harm especially where as here, that harm is deliberately and knowingly inflicted and constitutes the functional equivalent of an assault or battery, and where the actions of ABUSER and PARTNER were so grossly and recklessly in violation of rules, regulations, common sense, and NYPD protocol.

55.     The above described conduct of the Defendants resulted in the Plaintiff being deprived of the following rights under the Constitutions of New York State and the United States:

      a.  Freedom from assault;

      b.  Freedom from excessive force;

      c.  Freedom from battery;

      d.  Freedom from statutory sexual abuse, as heretofore described;

      e.  Freedom from emotional distress and imminent fear; and

      f.  Defendant officers' failure to intervene and stop the unlawful use of force against Plaintiff despite the means and opportunity to do so.

56.     The Defendants subjected the Plaintiff to such deprivations, either in a malicious or reckless disregard of the Plaintiff's rights or with deliberate indifference to those rights used guaranteed under the Fourth and Fourteenth Amendments of the United States Constitution as well as the New York State Constitution and common law.

{00048893}                                          12

57.     Also among these rights are Plaintiff's rights secured by the Fifth and Fourteenth Amendments, not to be deprived of life, liberty, or property without due process of law.

58.     At all relevant times, improper, illegal, and tortious conduct akin to that alleged of ABUSER in this case was so typical, consistent, and widespread in the NYPD and the City of New York, that Defendant the CITY OF NEW YORK and NYPD, as policy-makers, must have known about its likelihood and frequency of occurring.

59.     Awareness of such widespread misconduct by NYPD officers constituted a formal or informal policy of acceptance and endorsement of this misconduct by the CITY OF NEW YORK and NYPD.

60.     As policymakers, the CITY OF NEW YORK and NYPD failed to provide adequate training and/or supervision to its subordinates, including ABUSER, to such an extent that such failure amounts to deliberate indifference to the rights of those, including PLAINTIFF, who come in contact with their employees, including ABUSERS.

61.     As a direct and proximate result of these Defendants' foregoing misconduct, Plaintiff suffered grave physical injury, pain and suffering, economic loss, and emotional distress including psychological and emotional injury as described herein.

62.     By reason of the foregoing, Defendants CITY OF NEW YORK, NYPD, and PARTNER are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

63. The limited liability provisions of CPLR Article 16 are not applicable.

## COUNT II

## NEGLIGENCE AS AGAINST DEFENDANTS THE CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT, AND PARTNER

64.     Plaintiff repeats and re-alleges every allegation in this Complaint as if fully set forth herein.

65.     Defendants CITY OF NEW YORK and NYPD has grossly failed to train and adequately supervise its Officers so as to prevent the assault, battery, and sexual abuse, as described above.

66.     Defendants THE CITY OF NEW YORK and NYPD were negligent by failing to implement or enforce a policy with its officers which would have prevented the above described conduct from occurring, including, *inter alia,* policies which preclude partners from permitting or remaining silent and not immediately reporting to supervising officers when their partner leaves a stationed post with a citizen – particularly two minor, inebriated girls – and certainly when it is known that the intention of an officer's partner is to take such individual to a private apartment, and Defendants were otherwise negligent.

67.     Defendants THE CITY OF NEW YORK and NYPD were negligent due to their failure to implement a policy with its officers, or actively enforce the law and train its officers and personnel about it.

68.     Had Defendants THE CITY OF NEW YORK and NYPD not been negligent, the heretofore described sexual misconduct would not have occurred.

69.     The actions of Defendant PARTNER were negligent, careless, reckless, and in violation of NYPD and THE CITY OF NEW YORK policies, protocols, guidelines, and unreasonable under the circumstances, and Defendant PARTNER was otherwise negligent.

70.     Defendant PARTNER negligently failed to intervene and protect the Plaintiff from foreseeable risk of harm, despite knowledge, awareness, and understanding of the serious risk of harm that foreseeably would befall the Plaintiff.

{00048893}                                    14

71.     Defendant PARTNER violated policies and procedures of the NYPD which preclude partners from permitting their partners from separating from them, and require them not to remained silent and not immediately reporting to supervising officers when their partner leaves a stationed post with a citizen – particularly two minor, inebriated girls – and certainly when it is known that the intention of an officer's partner is to take such individual to a private apartment and the risks that this presents.

72.     The foregoing acts, omissions and systematic failures are customs and policies of THE CITY OF NEW YORK and NYPD which caused and/or permitted Defendant ABUSER to perpetrate an assault, battery, and sexual abuse upon the Plaintiff's person.

73.     As a direct and proximate result of the Defendants THE CITY OF NEW YORK, NYPD, and PARTNER's foregoing negligence, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

74.     By reason of the foregoing, Defendants THE CITY OF NEW YORK and NYPD are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest, costs, and legal fees.

75.     The limited liability provisions of CPLR Article 16 are not applicable.

## COUNT III

### NEGLIGENT HIRING AND SUPERVISION AS AGAINST DEFENDANTS CITY OF NEW YORK AND NYPD

76.     Plaintiff repeats and re-alleges every allegation in this Complaint as if fully set forth herein.

77.     Upon information and belief, Defendants CITY OF NEW YORK and NYPD were negligent in that prior to and at the time of the acts complained herein, due to the prior history of Defendant ABUSER, they knew or should have known the bad disposition of said

officer and Defendants had knowledge of facts that would put a reasonably prudent employer on inquiry concerning his bad disposition and the fact that the Defendant ABUSER was not suitable to be hired and/or employed by THE CITY OF NEW YORK and NYPD, and that due to their lack of training, Defendant ABUSER should have had adequate supervision so that he would not perpetrate the actions described above.

78.    At all relevant times, Defendants THE CITY OF NEW YORK and NYPD had a duty to exercise due care in hiring, appointing, assigning, retention, supervision and direction of ABUSER, so as to protect the public, including minor children such as Plaintiff, who were likely to come into contact with them, and/or under their influence, control or direction, and to ensure that ABUSER and PARTNER did not use their assigned positions to injure minors by sexual assault, contact or abuse.

79.    THE CITY OF NEW YORK and NYPD were negligent and failed to use reasonable care in hiring, appointing, assigning, retention, supervision and direction of ABUSER, failed to properly investigate his background and employment history, and/or hired, appointed and/or assigned him to work the beat, when these Defendants knew or should have known of facts that would make him a danger to the public, and children in particular, including Plaintiff; and Defendants were otherwise negligent.

80.    THE CITY OF NEW YORK and NYPD were negligent and failed to use reasonable care in the training and supervision of ABUSER and PARTNER, despite the fact that these Defendants knew or should have known of facts that would make him a danger to the public, and children in particular, including Plaintiff; and Defendants were otherwise negligent.

81.    ABUSER would not have been in a position to sexually abuse Plaintiff had Defendants THE CITY OF NEW YORK and NYPD not been negligent in the hiring, retention, supervision, and direction of ABUSER.

82.    It was foreseeable that negligent training and supervision of employees, including ABUSER, could result in the very misconduct and injuries sustained by the Plaintiff.

83.    Defendants THE CITY OF NEW YORK's and NYPD's aforesaid actions were negligent, grossly negligent reckless, and/or outrageous in its disregard for the rights and safety of Plaintiff.

84.    As a direct and proximate result of the Defendants THE CITY OF NEW YORK and NYPD's foregoing breaches, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

85.    By reason of the foregoing, Defendants THE CITY OF NEW YORK and NYPD are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest, costs, and legal fees.

86.    The limited liability provisions of CPLR Article 16 are not applicable.

## COUNT IV.

### AS AGAINST DEFENDANT CITY OF NEW YORK, NYPD, AND PARTNER FOR VIOLATION OF STATUTORY REPORTING OBLIGATIONS

87.    Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

88.    At all relevant times, N.Y. Soc. Serv. Law, including, *inter alia*, §§ 413 and 420, established the additional obligations of police officers, including Defendant PARTNER, to report suspicions and/or allegations of child sexual abuse.

{00048893}

89.     Furthermore, the aforementioned statutes codified the common law duties of police officers to investigate, protect, deter, and report allegations or suspicions of potential child sexual abuse.

90.     As alleged herein, Defendant PARTNER knew or should have known that his partner, ABUSER, was engaging in conduct that threatened the welfare of a minor and had a statutory obligation to report same immediately.

91.     By failing to discharge his responsibilities under the Social Services Law, Defendant PARTNER, as agent and employee of Defendants THE CITY OF NEW YORK and NYPD, violated statutory and common law reporting obligations.

92.     As a direct and proximate result of Defendant PARTNER and, on the basis of *respondeat superior*, THE CITY OF NEW YORK and NYPD, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described above.

93.     By reason of the foregoing, Defendants THE CITY OF NEW YORK and NYPD are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest, costs, and legal fees.

94.     The limited liability provisions of CPLR Article 16 are not applicable.

## COUNT V.

## AS AGAINST ALL DEFENDANTS FOR BREACH OF FIDUCIARY, STATUTORY AND ASSUMED DUTIES OF CARE

95.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

96.     At all relevant times, there existed a fiduciary relationship of trust, confidence and reliance between Plaintiff and Defendants.

97.     The decision to assist the Plaintiff on the night of the incident in question created a fiduciary and statutory duty of care on behalf of Defendants ABUSER and PARTNER, as well as their employer, THE CITY OF NEW YORK and NYPD, particularly since Plaintiff was a vulnerable child.

98.     Defendants were entrusted with the well-being, care, and safety of Plaintiff, which Defendant had a fiduciary and statutory duty to protect.

99.     In violation of this fiduciary duty, the Plaintiff was sexually and physically abused by an officer in whom trust and confidence had been placed.

100.     In addition, by their conduct described herein, Defendants assumed a duty with respect to Plaintiff, in that:

      a.   it created a hazardous condition that did not previously exist;

      b.   provided false assurances to Plaintiff that no hazard existed;

      c.   failing, in fact, to eliminate the hazard;

      d.   encouraging Plaintiff to expose herself to the hazard even thought these Defendants knew or should have known that the Plaintiff would be injured or damaged.

101.     The assault, battery, and abuse heretofore described and perpetrated upon the Plaintiff was reasonably foreseeable under these circumstances.

102.     Defendants breached their fiduciary and assumed duties to Plaintiff.

103.     By reason of the foregoing, Defendants THE CITY OF NEW YORK, NYPD, and PARTNER are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest, costs, and legal fees.

104.     The limited liability provisions of CPLR Article 16 are not applicable.

{00048893}                                    19

## COUNT VI.

## AS AGAINST DEFENDANTS THE CITY OF NEW YORK AND NYPD FOR RECKLESS AND WILLFUL MISCONDUCT

105.    Plaintiff repeats and re-alleges each and every allegation set forth above as if fully set forth herein.

106.    At all relevant times, Defendants THE CITY OF NEW YORK and NYPD affirmatively and/or impliedly represented to minor children and the general public that their employed peace officers and agents, including ABUSER, posed no risk of sexually abusing children, were appropriately credentialed, qualified, and trained, and that children, including Plaintiff, would be safe in their care.

107.    Defendants THE CITY OF NEW YORK and NYPD knew or should have known that this representation was false and that employing ABUSER and giving him unfettered access to children, including Plaintiff, posed an unacceptable risk of harm to children.

108.    Defendants THE CITY OF NEW YORK and NYPD carelessly, recklessly, and in wanton disregard for the safety of children, including Plaintiff, failed to have in place appropriate policies and/or protocols for officers that would have to safeguard children such as Plaintiff from sexual predators such as ABUSER, failed to have appropriate policies in place for making hiring and firing decisions, and failed to have in place an appropriate policy to monitor, supervise, or oversee the continued qualifications of employees, including ABUSER so as to protect vulnerable children from sexual abuse.

109.    In addition, Defendants THE CITY OF NEW YORK and NYPD, on the basis of vicarious liability through the actions of their employee, PARTNER, recklessly, willfully, and with gross indifference to the health and welfare of the Plaintiff, permitted the Plaintiff to be

escorted, groomed, molested, abused, violated, and assaulted by ABUSER, when PARTNER knew that such abusive and tortious conduct was almost certain to occur.

110.    This reckless and willful misconduct by Defendants THE CITY OF NEW YORK and NYPD as described herein was done with utter disregard as to the potential profound injuries which would ensue, and with depraved indifference to the health and well-being of children, including the Plaintiff.

111.    As a direct and proximate result of these Defendants' misconduct, Plaintiff suffered grave injury, including the physical, psychological and emotional injury and damages as described herein.

112.    By reason of the foregoing, Defendants THE CITY OF NEW YORK and NYPD are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest, costs, and legal fees.

113.    The limited liability provisions of CPLR Article 16 are not applicable.

## COUNT VII.

## AS AGAINST DEFENDANTS CITY OF NEW YORK, NYPD, AND PARTNER FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

114.    Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

115.    The sexual abuse of Plaintiff was extreme and outrageous conduct, beyond all possible bounds of decency, atrocious and intolerable in a civilized world.

116.    Defendants CITY OF NEW YORK, NYPD, and PARTNER's aforesaid negligent, grossly negligent, and reckless misconduct, endangered Plaintiff's safety and caused her to fear for her own safety.

{00048893}

117.    Defendants CITY OF NEW YORK, NYPD, and PARTNER knew or disregarded the substantial probability that PARTNER would cause severe emotional distress to Plaintiff.

118.    As a direct and proximate result of these Defendants' foregoing misconduct, Plaintiff suffered severe emotional distress including psychological and emotional injury as described herein.

119.    By reason of the foregoing, Defendants CITY OF NEW YORK, NYPD, and PARTNER are liable to Plaintiff for compensatory and punitive damages in an amount in excess of $75,000 to be determined at trial, plus interest and costs.

120.    The limited liability provisions of CPLR Article 16 are not applicable.

**WHEREFORE**, Plaintiff prays for judgment on all of the preceding Counts as follows:

a.    Awarding Plaintiff compensatory damages for her injuries, in an amount in excess of $75,000, to be determined at trial;

b.    Awarding Plaintiff punitive damages for her injuries, in an amount in excess of $75,000, to be determined at trial;

c.    Awarding Plaintiff prejudgment interest, to the extent available by law;

d.    Awarding Plaintiffs costs and disbursements and attorneys' fees to the extent available by law, including, specifically, pursuant 42 U.S.C. §1988(b); and

e.    Awarding such other and further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all issues triable by jury in this action.

{00048893}                                        22

Dated: New York, NY
      February 27, 2020

Respectfully submitted,
PHILLIPS & PAOLICELLI, LLP

By:    Ari L. Taub, Esq. (AT7626)
        Diane Paolicelli, Esq. (DP3067)
        747 Third Avenue, 6th Fl.
        New York, NY 10017
        *Attorneys for Plaintiff*